IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUGO DIAZ, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 2702 |
| | ) | |
| PRUDENTIAL INSURANCE | ) | Judge Norgle |
| COMPANY OF AMERICA, | ) | Magistrate Judge Brown |
| | ) | |
| Defendant. | ) | |

**FILED**

SEP - 8 2003

MICHAEL W DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF MOTION

DOC...

SEP 1 5 2003

TO:    Leonard S. Shifflett
       Quarles & Brady, LLC
       500 W. Madison, Suite 3700
       Chicago, IL  60661-2589

PLEASE TAKE NOTICE that on September 12, 2003, at 10:30 a.m., or as soon thereafter as counsel may be heard, we shall appear before the Honorable Charles R. Norgle, United States District Judge, in Courtroom 2341, 219 S. Dearborn St., Chicago, Illinois, and shall then and there present Plaintiff's (i) Motion for Summary Judgment; (ii) Memorandum in Support of Motion for Summary Judgment; and (iii)) Local Rule 56.1 Statement of Facts, copies of which are hereby served upon you.

_____
Attorney for plaintiff

Mark D. DeBofsky
Daley, DeBofsky & Bryant
1 N. LaSalle, Suite 3800
Chicago, Illinois 60602
(312) 372-5200
FAX (312) 372-2778



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

SEP - 8 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| HUGO DIAZ, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 2702 |
| | ) | |
| PRUDENTIAL INSURANCE | ) | Judge Norgle |
| COMPANY OF AMERICA, | ) | Magistrate Judge Brown |
| | ) | |
| Defendant. | ) | |

DOCKETED

SEP 1 5 2003

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NOW COMES the plaintiff, HUGO DIAZ, by his attorneys, MARK D. DE BOFSKY, NATHAN Q. RUGG and DALEY, DEBOFSKY & BRYANT, and pursuant to Fed.R.Civ.P. 56, moves for the entry of summary judgment on his behalf and against the defendant on the ground that there is no disputed issue of material fact and plaintiff is entitled to judgment as a matter of law. In support thereof, plaintiff has submitted the required statement of facts pursuant to Local Rule 56.1, and she has also submitted a memorandum of law.

WHEREFORE, plaintiff prays that the court grant his motion for summary judgment and award plaintiff all past-due long-term disability benefits, along with interest at a rate of 9% pursuant to 215 ILCS 5/357.9. In addition thereto, plaintiff prays for a declaratory judgment that benefits continue pursuant to the policy's terms and conditions. Finally, plaintiff prays for an award of fees and costs pursuant to 29 U.S.C. §1132(g).



_____
Attorney for plaintiff


Mark D. DeBofsky
Daley, DeBofsky & Bryant
1 N. LaSalle, Suite 3800
Chicago, Illinois 60602
(312) 372-5200
FAX (312) 372-2778

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

SEP - 8 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED

SEP 1 5 2003

|                                         |   |                              |
|-----------------------------------------|---|------------------------------|
| HUGO DIAZ,                              | ) |                              |
|     Plaintiff,      | ) |                              |
|                                         | ) |                              |
| v.                                      | ) | Case No. 03 C 2702           |
|                                         | ) |                              |
| PRUDENTIAL INSURANCE                    | ) | Judge Charles R. Norgle      |
| COMPANY OF AMERICA,                     | ) |                              |
|                                         | ) | Geraldine Soat Brown         |
|     Defendant.      | ) | U.S. Magistrate Judge        |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

As a benefit of his employment with Bank One, Hugo Diaz received long term disability coverage as a participant in Bank One's long term group disability plan ("LTD Plan"), underwritten by Prudential Insurance Company of America ("Prudential"). In February 2002, Diaz submitted a claim for long term disability benefits under the LTD Plan which alleged disability as of February 4, 2002 due to severe low back pain associated with degenerative disc disease. Prudential denied Diaz's initial claim for benefits as well as two requests for reconsideration. Upon denial of the final request for reconsideration, Plaintiff filed the instant action. Plaintiff now moves for summary judgment in accordance with Fed.R.Civ.P. 56; alternatively, plaintiff seeks judgment pursuant to Fed.R.Civ.P. 52 as explained below.

### *Statement of Facts*

Diaz filed the requisite Local Rule 56.1(a) Statement of Facts; however, some of the more significant facts are provided.

Hugo Diaz ("Diaz") is and was at all times relevant to this proceeding a resident of Chicago, Illinois. Pl.56.1 ¶5. Bank One employed Diaz as a computer programmer analyst



before he filed for long term disability benefits. Pl.56.1 ¶7. On February 4, 2002, Diaz ceased working at Bank One due to severe low back pain associated with degenerative disc disease for which he underwent unsuccessful surgery. Pl.56.1 ¶¶ 7, 71.

Diaz filed for long term disability benefits in July, 2002. Pl.56.1 ¶12. Prudential's LTD Plan provides benefits after the expiration of a 182 day elimination period of "Total Disability." Pl.56.1 ¶9. The LTD Plan defines "Total Disability" as follows:

> Your inability to perform the essential functions of your regular occupation due to an injury or illness. You may be eligible for LTD benefits even if you're able to perform some work, as long as you're unable to perform the essential duties of your regular occupation and your disability results in an income loss of at lease 20% due to that illness or injury. Pl.56.1 ¶ 10.

Despite the overwhelming medical evidence supporting Plaintiff's inability to perform the "essential" and "material" duties of his occupation, Prudential denied Plaintiff's claim for long term disability benefits on August 27, 2002. Pl.56.1 ¶72.

Plaintiff appealed Prudential's decision and submitted additional medical records from Dr. An, Dr. Amin, and Athletico Physical Therapy. Pl.56.1 ¶73. Plaintiff also provided Prudential with Dr. An's office notes from July 2002, August 2, 2002, a July 19, 2002 lumbar spine x-ray and a CT scan from July 31, 2002, and progress updates from Athletico, all of which indicated high levels of pain. Pl.56.1 ¶¶47;54;56. Dr. An's September 6, 2002 treatment notes indicating Plaintiff remained disabled because of ongoing back pain. Pl.56.1 ¶51. Additional medical evidence submitted also included an "Ability To Do Work-Related Activities" assessment completed by Dr. An. Pl.56.1 ¶53. Dr. An wrote that Plaintiff could not even lift ten pounds, could sit or stand for only 15 minutes at a time, must walk five minutes every fifteen minutes and needs to be able to change positions at will. Dr. An stated Plaintiff's reaching, pushing and pulling ability is severely affected by his impairments and that Plaintiff is on

2

narcotic pain medications which affect his ability to do work and also indicate that his severe pain complaints were credible. *Id.* Dr. Amin at Rush Pain Management also opined that Plaintiff's back condition was disabling. Pl. 56.1 ¶75. Despite this evidence of disability, on January 22, 2003, Prudential denied Plaintiff's request for reconsideration. Pl.56.1 ¶74.

On February 4, 2003, Plaintiff submitted an additional request for reconsideration. Pl.56.1 ¶75. In his appeal, Plaintiff supplied office notes from Dr. Amin to verify his continued pain treatment. *Id.* Plaintiff also included Dr. Amin's recommendation for the implantation of a spinal cord stimulator to reduce Plaintiff's unrelenting pain. Plaintiff also asked Prudential to review the medical records it had previously overlooked from Athletico and Dr. Amin showing persistence of unremitting severe pain despite physical therapy and strong high potency pain killers along with steroidal injections, Pl.56.1 ¶75. Despite such evidence, and in the absence of any independent examination disputing Diaz's disability, Prudential denied Plaintiff's request for reconsideration on April 16, 2003. Pl.56.1 ¶78. Prudential's denial noted that Dr. An's treatment notes had been reviewed, but there was no indication that medical evidence from Dr. Amin, Dr. Kramer or Athletico was considered. Upon the denial of his final request for reconsideration, having exhausted all administrative remedies, Plaintiff filed this action. Pl.56.1 ¶79.

### *Argument*

## I.    THE STANDARD OF REVIEW

*Herzberger v. Standard Insur. Co.,* 205 F.3d 327 (7th Cir. 2000) followed *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989) in ruling the default standard of review in ERISA cases is *de novo.* The arbitrary and capricious standard of review applies only if the plan/insurance policy contains language expressly reserving discretion to determine claims.[1] No

---

[1]*Herzberger* suggested the following safe harbor language which, if used, would trigger deferential review: "Benefits under this plan will be paid only if the plan administrator decides in his direction that the applicant is

such language can be found in Prudential's policy of insurance at issue in this case. Accordingly, the court is required to conduct a plenary review of the evidence.

## II.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact an that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiff established his entitlement to summary judgment according to these standards.

## III.   An Alternative to Summary Judgment

As an alternative to application of Rule 56, Plaintiff suggests that the court apply Rule 52 of the Federal Rules of Civil Procedure in order to weigh the evidence and enter findings of fact and conclusions of law. Plaintiff stipulates and consents to such a procedure should the court find the existence of genuine issues of material fact. The Ninth Circuit, in *Kearney v. Standard Insurance Co.*, 174 F.3d 1084 (9th Cir. 1999), explicitly approved of and recommended such a procedure as a means of resolving ERISA benefit cases in lieu of bench trials; and the Seventh Circuit appears to have agreed that a "bench trial" review of the parties written submissions is the appropriate way to review this claim. *Hess v. Hartford*, 274 F.3d 456 (7th Cir. 2001).[2]

---

entitled to them." While that precise formulation is not required, the court explained: "Equally clearly, the presumption of plenary review is not rebutted by the plan's stating merely that benefits will be paid only if the plan administrator determines they are due, or only if the applicant submits satisfactory proof of his entitlement to them" 205 F.3d at 331.

[2] Moreover, in recent cases decided in this District, Judge James Holderman applied such a procedure (*See, LaBarge v. Life Insur. Co. of North America*, 2001 WL 109527 (N.D. Ill. 2001), as did Judge Elaine Bucklo (*Deal v. Prudential*, 2003 U.S. Dist. LEXIS 8697 (N.D. Ill.).

4

Accordingly, Rule 52 would therefore provide an expeditious means of resolving this matter in plaintiff's favor.

## IV. Prudential erroneously concluded Plaintiff was not "totally disabled" from his occupation.

The medical records of Dr. An, Dr. Amin and Dr. Kramer, corroborated with the reports from Athletico Physical Therapy, confirm that Plaintiff's low back impairments associated with degenerative disc disease result in disability. This inexorable pain hinders Plaintiff's ability to sit, stand, and maintain attention and concentration throughout the course of a regular work day or work week. Plaintiff's failure to exercise these functions precludes him from performing the "material" and "essential" duties of his occupation. Thus, Plaintiff is "totally disabled," as defined by Prudential, Policy No. G-56249. However, despite Plaintiff's incontrovertible medical evidence showing inability to perform his occupational duties for an eight hour workday or forty hour work week, Prudential denied Plaintiff's claim for disability benefits. Pl.56.1 ¶72.

Prudential's initial denial notice states "although you continue to have complaints of pain . . . the available medical evidence does not support your reported inability to perform your own sedentary occupation with the ability to change positions at will." Pl.56.1 ¶72. Prudential claims its decision was supported by the medical evidence; however, in rendering its decision, Prudential engaged in a selective review of the record and ignored consider crucial evidence from Dr. Amin authenticating Plaintiff's unremitting pain and inability to return to work.

Prudential's behavior mirrors the defendant's actions in *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914 (7th Cir. 2003). *Hawkins* involved a disability claim based on fibromyalgia and chronic fatigue syndrome; and like Plaintiff the defendant rejected plaintiff's subjective complaints of pain and denied the claim. Pl.56.1¶72. However, as *Hawkins* makes clear, a plan administrator cannot discount self-reports of disabling pain solely because

5

the objective medical evidence does not fully support them. 326 F.3d at 919. As the court also noted, subjective pain complaints in the presence of an objective diagnosis are sufficient to support disability and concluded "The record contains nothing more than scraps to offset the evidence presented by Hawkins and by Dr. Katz. The denial of the application was unreasonable."*Id.* Moreover, each person's experience of pain is unique and no test can measure how much pain a person feels. *See, Smith v. Continental Casualty Co.,*2003 U.S.Dist.LEXIS 13749 (D.Md. 8/4/03). As pain cannot be demonstrated by objective proof, the "absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." *Id., citing Hyatt v. Sullivan,* 899 F.2d 329, 337 (4th Cir. 1990). Thus, a plan administrator cannot disregard Plaintiff's reports of disabling pain *"solely* because the objective medical evidence does not fully support them." *Id., citing Hawkins,* at 919. The *Smith* court further noted that:

In addition to objective medical evidence, an evaluation of the vocational impact of pain must also consider: the claimant's work history; observations of the claimant by third parties, such as coworkers and superiors; the professional opinion of treating and examining physicians; the claimant's history of pain management an drug therapy; the dosage, effectiveness, and side effects of medications; the claimant's reputation for truthfulness; the consistency (or lack therof) between the reported symptoms and the claimant's daily activities. *Id.,*at *15-16.

Here, Prudential provides nothing but "scraps" to offset the findings of Plaintiff's treating physicians. Prudential's initial denial noted that it had reviewed Dr. An's office notes of April 23, May 10 and June 4, but Prudential completely ignored the objective medical evidence following the posterolateral fusion which document the low back pain radiating into Plaintiff's legs, a decreased range of motion, gait deviations and the multiple prescribed medications. Pl.56.1 ¶¶33,38. Prudential states that since leaving work, Plaintiff was treated by Dr. An, Dr. Amin and Athletico Physical Therapy, yet Prudential indicates it requested medical records from Dr. An and Athletico, but not Dr. Amin. While the record contains numerous notes and updates

6

from Athletico, there is no indication that these records supporting Plaintiff's subjective complaints of pain were made a part of the evaluation as Prudential never discussed any of Athletico's findings of decreased flexibility, decreased strength, gait deviations, inability to walk for extended periods, or inability to sit for more than 10 to 15 minutes. Pl. 56.1 ¶¶40,44,45,46.

Similarly, Prudential's justification for denying Plaintiff's request for reconsideration is dwarfed by the abundance of evidence supporting Plaintiff's disability. Pl.56.1¶74. Prudential's claim that the medical documentation does not "reveal a sickness or injury that would prevent Mr. Diaz from performing sedentary duties" is entirely illogical and completely inconsistent with Plaintiff's medical records. Pl. 56.1¶74. Plaintiff's physical therapist noted increased pain, difficulty in sitting and constant lumbar pain and left anterior thigh numbness. Pl.56.1 ¶56. Dr. An opined that Plaintiff remained disabled because of on going symptoms of back pain. Pl.56.1 ¶¶51,52. Even more conclusive is the work related activities assessment completed by Dr. An. Dr. An instructed Plaintiff to walk five minutes every fifteen minutes during the day and restricted Plaintiff to lifting less than 10 pounds on both a frequent and occasional basis. Pl.56.1 ¶53. An abundance of consistent medical records from Dr. An, Dr. Amin, and Athletico indicated there was little to no improvement in Plaintiff's condition, poor strength, decreased activity level, and an increase in powerful medications to control pain. Pl.56.1 ¶¶54-57.

In *Govindarajan v. FMC Corp.*, 932 F.2d 634, 637 (7th Cir. 1991), the court held that a selective review of medical evidence constitutes arbitrary and capricious decision making. In *Govindarajan*, FMC argued there was no physical basis for plaintiff's pain symptoms and that the plaintiff was capable of returning to work. FMC based its decision on a partial statement by the plaintiff's treating physician that the plaintiff was able to work in another capacity. *Id.* FMC ignored the evaluation of the chief of spinal surgery at Loyola University Medical Center which

contradicted his capability to return to work. The court reasoned that because FMC maintained the position there was no physical evidence of subjective pain by the plaintiff despite overwhelming medical evidence, the benefit termination was arbitrary and capricious. *Id.*

It is unreasonable to conclude that Plaintiff could perform the "material" and "essential" duties of his occupation given the evidence in the record. Prudential deliberately ignored objective medical evidence supporting Plaintiff's complaints of pain and "total disability." These actions demonstrate that Prudential erroneously denied Plaintiff's claim for disability benefits, thereby requiring this Court to reverse the unsupported decision.

Similarly, Prudential engaged in a biased review of Plaintiff's medical evidence to sustain its conclusion. Like the defendant in *Govindarajan*, Prudential ignored medical evidence from Plaintiff's treating physicians and based its decision on partial and incomplete statements of Plaintiff's examining physicians. In denying both requests for reconsideration, Prudential recommends that position changes while working would allow Plaintiff to perform the duties of a sedentary occupation. Pl.56.1 ¶¶74, 78. However, Prudential's assertion is contrary to the medical evidence. Position changes might alleviate some low back pain; however, Dr. An also instructed Plaintiff to remove himself from work every fifteen minutes to walk for five minutes, and he restricted Plaintiff's lifting/carrying ability to less than ten pounds. Pl.56.1 ¶53. Subsequent medical reports show Plaintiff's range of motion was significantly decreased; core strength was poor; sitting for more than 15 minutes or standing more than 20 minutes caused pain; and Diaz cannot sleep normally due to pain. Pl.56.1 ¶¶53-55. Moreover, Plaintiff required an increase in narcotics and multiple steroid injections by Dr. Amin, along with trigger point injections, all adding up to a medically supported conclusion by Dr. An that Plaintiff was "*significantly impaired* and unable to return to work." Pl.56.1 ¶¶56-62 (emphasis added).

8

Likewise, Prudential supports its decision with a mischaracterization of Dr. An's initial statements that Plaintiff had done well post operatively. Pl.56.1 ¶78. However, Dr. An's initial statements were quickly outdated and more recent reports confirm severe low back pain, numbness, and continued unrelenting pain and an inability to return to work. Pl.56.1 ¶¶41,47,48,51,55,62. Prudential also failed to consider treatment notes verifying Plaintiff's decreased strength, flexibility, gait deviations and pain with palpation. Pl.56.1 ¶¶40. This use of inaccurate and incomplete medical examinations illustrates Prudential's selective, biased review of Plaintiff's file. Prudential relied upon selective portions of Dr. An's medical record that supported its decision, while ignoring objective medical evidence that supported Plaintiff's disability. Prudential also erred when it neglected to consider the collective effect of Plaintiff's impairments. The district court opinions in both *Laser v. Provident Life & Accidental Insur. Co.,* 211 F.Supp.2d 645 (D.Md. 2002) and *Austin v. Continental Casualty Co.,* 216 F. Supp. 2d 550 (W.D.N.C. 2002) are instructive on this issue. *Austin* highlighted the necessity of a holistic evaluation of disability in order to consider the combined effect of a claimant's impairments. 216. F.Supp. at 559. *Laser* not only criticized the insurer for failing to conduct an independent examination; but the court also overturned the benefits denial because the plan administrator "failed to consider all of the plaintiff's medical evidence, failed to consider his injuries and illnesses in conjunction with one another, and took an adversarial approach." 211 F.Supp. at 655. These district court opinions provide persuasive authority for this court and illustrate the implication of Prudential's decision not to holistically examine Plaintiff.

Furthermore, the Social Security Administration's (SSA) award of disability benefits authenticates the opinions of Plaintiff's examining physicians. The SSA award of benefits demonstrates Plaintiff's "inability to engage in any substantial gainful activity." 42 U.S.C. §

423(d)(1)(A). The fact that the SSA found Plaintiff disabled under a more stringent set of guidelines than Prudential, while not conclusive, is certainly probative of disability. *See Halpin v. W.W. Grainger, Inc.* 962 F.2d 685, 695 (7th Cir. 1992) (deemed social security concepts "instructive" of an individual's condition). Similarly, in *Ruder v. Commonwealth Edison*, 2000 WL 1741921 (N.D.Ill. 2000), the court held that favorable Social Security findings, while not dispositive, are entitled to some weight due to the substantial similarity between disability definitions under Social Security and private disability policies. Furthermore, in *Kirwan v. Marriot Corporation*, 10 F.3d 784 (11th Cir. 1994), the court overturned a lower court decision denying benefits on the ground that a favorable administrative law judge decision was not adequately considered.[3]

In Plaintiff's case, the Social Security Administrative Law Judge (ALJ) reviewed the medical records from Dr. An, Dr. Amin, and Athletico and determined that upon this medical record Plaintiff was disabled. Pl. 56.1 ¶80. The ALJ also found that Dr. An's functional capacity assessment was "persuasive" evidence that Plaintiff's limitations were consistent with the medical record. *Id.* Moreover, the ALJ considered that the various medications and treatment modalities failed to alleviate pain, including strong narcotics (Duragesic, Topomax, Paxil, Methadone, etc.) and multiple lumbar spine epidural injections, which produced "minimal relief." *Id.* Upon this record, the ALJ determined that:

> the claimant's medically determinable impairments precluded the following work related activities: lifting more than 10 pounds occasionally; sitting, standing or walking for more than 15 minutes continuously; and sustaining the activities of

---

[3] The court commented on this decision in a footnote, "A district court may consider the SSA determination of disability in reviewing a plan administrator's determination of benefits. *See Pierce v. American Waterworks Co., Inc.*, 683 F.Supp. 996, 1000 (W.D.Pa 1088) (relying on SSA determination of disability, among other things, to hold that administrator's denial of benefits was arbitrary and capricious); *Ferguson v. Greyhound Retirement & Disability Trust*, 613 F.Supp. 323 (D.C.Pa. 1085)(relying on SSA determination of disability, among other things, to deny defendant's motion for summary judgment.)"

work, including sitting, standing, and/or walking for a combined total of 6 to 8 hours per day, 5 days a week.

Based on those limitations, the ALJ further declared that Plaintiff's residual functional capacity was for a limited range of sedentary work and that Plaintiff was unable to perform any past relevant work; thus Plaintiff has been under a "disability" since February 4, 2002 for purposes of titles II and XVI of the Social Security Act. *Id.*

These findings are instructive of Plaintiff's inability to perform the "material and substantial" duties of his occupation. Although Prudential denied Plaintiff's final request for reconsideration before the ALJ rendered his decision, both decisions are based on identical medical evidence. Therefore, SSA's decision confirms Prudential's mistaken conclusion and requires this court to remand this case for a correct determination.

Finally, the weight given to Dr. Brown's[4] medical records review should be subject to heightened scrutiny since Dr. Brown had no first hand knowledge of Plaintiff's medical history and ignored contrary objective medical evidence. "As compared to consultants retained by a plan, it may be true that treating physicians as a rule 'have a greater opportunity to know and observe the patient as an individual.'" *Black and Decker Disability Plan v. Nord*, 123 S. Ct. 1965, 1971 (2003). The Seventh Circuit, in *Hawkins*, 326 F.3d at 917, stated treating and examining physicians have "superior information" when "the consultant does not bother to examine the patient," and insurance companies have a clear incentive to contract with medical experts inclined to find a claimant "not disabled." *Darland v. Fortis*, 317 F.3d 516, 528 (6th Cir. 2003). Further, impairing an impartial review, "experts have a clear incentive to make a finding of "not disabled" in order to save their employers money and to preserve their own consulting arrangements. *Black and Decker Disability Plan v. Nord*, 123 S. Ct. at 1971. Additionally,

---

[4] Insurance companies like Prudential commonly solicit the services of Dr. Brown. *See Armstrong v. Liberty Mutual Life Insurance Co.*, 2003 U.S. Dist. LEXIS 12290 (S.D.N.Y. June 30, 2003), another case involving Dr. Brown.

courts in this district have held that in the face of the treating doctor reports and the absence of any contrary evidence from anyone who has examined Plaintiff that a report of a non-examining, non-treating physician should be discounted when contradicted by all other evidence in the record. *LaBarge v. Life Insurance co. of North America,* 2001 WL 109527(N.D.Ill. 2001). *See also Millner v. Schweiker,* 725 F.2d 243, 245 (4th Cir. 1984); *Browne v. Richardson,* 468 F.2d 1003, 1006 (1st Cir. 1972).

Like *LaBarge*, Prudential never examined Plaintiff. Instead, Prudential used statements from a non-examining, non-treating physician to deny Plaintiff's final request for reconsideration. Dr. Brown opines that, "Mr. Diaz's ongoing symptoms of persistent severe and disabling pain are not supported by the clinical and diagnostic evidence related to Mr. Diaz's lumbar spine condition." Pl.56.1 ¶53. Dr. Brown's conclusion is completely contrary to the medical opinions of Dr. An and Dr. Amin, who confirm Plaintiff's lower back pain and his inability to perform the "material and essential duties" of his occupation. Pl.56.1 ¶¶28, 29, 38, 40, 45, 46. Here, the treating physicians have "superior knowledge" of Plaintiff's situation.

Dr. Brown claimed there was no documented lumbar range-of-motion (ROM) deficits, or positive nerve root tensions signs, but ignores that Athletico's reports show dural irritation with bilateral femoral nerve and SLR. Pl.56.1 ¶50. Dr. Brown claims that Plaintiff's symptoms of lower extremity numbness, lower extremity pain, and severe low back pain do not correlate with the clinical and diagnostic evidence yet cites no objective medical evidence or even a report of an examination to support this finding. Pl.56.1¶77. Dr. Brown notes that after months of physical therapy, Plaintiff "did not substantially improve functionally in terms of sitting or standing tolerance," yet fails to discuss how this supports a determination that Plaintiff can return to work. Instead, Dr. Brown generalizes that "for an individual following single level,

12

uncomplicated lumbar fusion" reasonable physical restrictions/limitations would include no frequent to constant bending and twisting, no very heavy lifting, and position changes as needed for comfort, every 15 to 30 minutes. *Id.*

Dr. Brown claims that non-physical factors adversely impacted Plaintiff's return to work, stating that Plaintiff's symptoms were disproportionate to the medical evidence and "expected recovery." *Id.* Dr. Brown attacks Plaintiff's self-described pain level at "10" as not being supported by vital signs of hypertension or tachycardia "appropriate physiological responses to severe pain."[5] Yet Dr. Brown overlooks evidence to the contrary including treatment notes that showed a pain level at 10 on November 12, 2002, with elevated blood pressure of 147/96; notes from a spinal epidural injection showed blood pressure of 143/90 upon arrival at the pain center; a pain level of 10 on January 14, 2003 with blood pressure of 167/?; pain level 10 on March 11, 2003 with blood pressure at 134/97. Pl.56.1¶¶56,59,60,64. Moreover, Dr. Brown's own report stated that on "2/26/03, the claimant's blood pressure was noted to be 121/80 with a pulse of 86. These vital signs corresponded with reported pain of '10.'" Pl.56.1¶77.

Dr. Brown cites Dr. An's statement that "in one month [Plaintiff] should be able to go back to work with some restrictions." However, one month later Plaintiff is treated in the emergency room at Rush Hospital and given morphine and Toradol for extreme Pain.[6] Pl.56.1 ¶49. Three days later Dr. An stated that Plaintiff's low back pain is "uncontrollable" and that he "remains disabled because of ongoing symptoms of back pain." Pl.56.1 ¶51. Prudential provides no objective medical evidence or report of an examination to negate these findings.

---

[5] Hypertension is defined as systolic blood pressure equal to or greater than 140, and/or diastolic blood pressure equal to or greater than 90. The Merck Manual, 415 (16th ed 1992).

[6] Neither Dr. Brown nor Prudential indicates whether Diaz's treatment for extreme pain at the E.R. on September 2, 2002, was considered in its decision to deny benefits. More troubling is Dr. Brown's complete lack of discussion regarding Plaintiff's pain management and drug therapy, or the dosage, effectiveness and side effects of pain medications. *See Smith, supra.*

13

Instead, it relied upon an external medical records review as justification for their flawed decision.

### *Conclusion*

For the reasons presented above, Plaintiff has established his inability to perform the material and substantial duties of a computer programmer analyst. This requires an award of long term disability benefits of $2,953.42 monthly, offset by Social Security disability benefits (to be determined), retroactive to February 2002. Plaintiff's impairments and pain have been constant since February 2002, as noted by his treating and examining physicians, and Prudential provides nothing but inaccurate and incomplete medical evidence to disprove this.

Upon entry of judgment for all benefits due, the court should also award Plaintiff prejudgment interest at a rate of 9% pursuant to 215 ILCS 5/357.9 (Illinois insurance statute requiring payment of 9% interest on overdue period insurance payments). According to *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir. 1991), in ERISA benefit claims "prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation is incomplete and the defendant has an incentive to delay." The Court also stated, in *Fritcher and Country Trust Bank v. Health Care Service Corporation*, 301 F.3d 811, 820 (7th Cir. 2002), prejudgment interest is aimed at "making Plaintiffs whole, who were forced to deplete their assets ... during the period in which benefits were wrongly withheld."

In addition, attorney's fees should be awarded since ERISA allows a court, in its discretion, to award "a reasonable attorney's fee and costs of action to either party." *Id.* at 819, *citing* 29 U.S.C. § 1132(g)(1). In an ERISA case there is a modest presumption in favor of fee awards. *Bowerman v. Wal-Mart*, 226 F.3d 574, 592 (7th Cir. 2000). In this circuit, a five factor test is appropriate to determine whether the prevailing party receives attorney's fees. 301 F.3d

14

811, 819. This includes: 1) the degree of the offending party's bad faith; 2) the degree of the offending party's ability to satisfy an award of attorney's fees; 3) the degree to which such an award would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on all plan members; and the 5) the relative merits of the parties positions. *Id.* Under the circumstances, the first factor is established since Prudential failed to provide a single piece of objective medical evidence to support their decision. Prudential's actions, like the actions of the defendant in *Fritcher*, satisfy the second and third factors as well, since there is no evidence of Prudential's inability to pay the award and there is no question that such an award would deter future "superficial actions" of this kind. *See id.* The fourth and fifth factors are also satisfied under the *Fritcher* since "improvements in the Plan's actions are likely to be made" and "the merits of the case [are] strongly on the side of the Plaintiffs." *See. id.*

Accordingly, Plaintiff prays for an award of all retroactive benefits due and owing prejudgment interest on all benefits dues, a declaratory judgment that Plaintiff is entitled to ongoing disability benefits so long as he continues to meet the terms and conditions for continued receipt of such benefits, attorney's fees and costs.

Respectfully Submitted,

Mark D. DeBofsky
One of Attorney's for Plaintiff
Hugo Diaz

Daley, DeBofsky & Bryant
1 North LaSalle St., Suite 3800
Chicago, Illinois 60602
(312) 372-5200

15

## CERTIFICATE OF SERVICE

Mark D. DeBofsky, the undersigned attorney, certifies that on September 8, 2003, he served the foregoing Notice, Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, and Local Rule 56.1 Statement of Facts by mailing copies thereof, addressed to the individuals named herein, at Chicago, Illinois.

Mark D. DeBofsky