IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
OCT 10 2003
03 OCT 10 PM 1:17
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| HUGO DIAZ, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 03 C 2702 |
| | ) |
| PRUDENTIAL INSURANCE COMPANY | ) |
| OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**DOCKETED**

OCT 2 0 2003

## NOTICE OF FILING

TO:  Mark D. DeBofsky
     Daley, DeBofsky & Bryant
     One North LaSalle Street
     Suite 3800
     Chicago, Illinois 60602

PLEASE TAKE NOTICE that on October 10, 2003, we caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **Defendant's Motion For Summary Judgment and Memorandum of Law In Support Of Defendant's Motion For Summary Judgment And In Opposition To Plaintiff's Motion For Summary Judgment**, a copy of which is attached hereto and hereby served upon you.

Respectfully submitted,

PRUDENTIAL INSURANCE COMPANY OF AMERICA

BY: _Leonard S. Shifflett_
    One of its Attorneys

Leonard S. Shifflett (ARDC #2587432)
Brendan O'Connor (ARDC# 6276720)
Keith Allen (ARDC #6271854)
QUARLES & BRADY LLP
500 West Madison, Ste. 3700
Chicago, Illinois  60661-2511
(312) 715-5000

## CERTIFICATE OF SERVICE

I, Leonard S. Shifflett, an attorney, certify that I caused a copy of the foregoing Notice of Filing, together with the documents referred to therein, to be served upon:

> Mark D. DeBofsky
> Daley, DeBofsky & Bryant
> One North LaSalle Street
> Suite 3800
> Chicago, Illinois 60602
> 312-372-5200 – phone
> 312-372-2778 - fax

via Messenger, postage prepaid, this 10th day of October, 2003, before the hour of 5:00 p.m.

_Leonard S. Shifflett_

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HUGO DIAZ,                                    )
                                              )
                    Plaintiff,                )
                                              )
          vs.                                 )       Case No. 03 C 2702
                                              )
PRUDENTIAL INSURANCE COMPANY OF               )
AMERICA,                                      )       Judge Charles R. Norgle
                                              )
                    Defendant.                )       Geraldine Soat B...
                                              )       Magistrate Judge

**FILED**

**OCT 1 0 2003**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**
OCT 2 0 2003

## <u>MOTION FOR SUMMARY JUDGMENT</u>

Defendant, Prudential Insurance Company of America ("Prudential"), by its attorneys Leonard S. Shifflett, Brendan O'Connor and Keith E. Allen, and pursuant to Fed.R.Civ.P. 56, moves for the entry of summary judgment on its behalf and against Plaintiff on the ground that there is no disputed issue of material fact and Prudential is entitled to judgment as a matter of law. In support thereof, Prudential has submitted the required statement of facts pursuant to Local Rule 56.1, and it has also submitted Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment and In Opposition To Plaintiff's Motion for Summary Judgment.

WHEREFORE, Prudential prays that the court grant its motion for summary judgment and dismiss Plaintiff's Complaint with prejudice and award to Prudential its attorneys' fees and costs.

Respectfully submitted,

PRUDENTIAL INSURANCE COMPANY OF
AMERICA

BY: _Leonard S. Shifflet_

One of its Attorneys

Leonard S. Shifflett (ARDC #2587432)
Brendan O'Connor (ARDC# 6276720)
Keith Allen (ARDC #6271854)
QUARLES & BRADY LLP
500 West Madison, Ste. 3700
Chicago, Illinois 60661-2511
(312) 715-5000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HUGO DIAZ,                           )
                    Plaintiff,       )
                                     )
v.                                   )       Case No. 03 C 2702
                                     )
PRUDENTIAL INSURANCE                 )       Judge Norgle
COMPANY OF AMERICA,                  )       Magistrate Judge Brown
                                     )
                    Defendant.       )

**FILED**

OCT 1 0 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**

OCT 2 0 2003

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, Prudential Insurance Company of America ("Prudential") by its attorneys Leonard S. Shifflett, Brendan O'Connor and Keith Allen, submit this Memorandum of Law in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment.

### Introduction

Based on the undisputed facts and applicable law, judgment should be entered in favor of Prudential on Plaintiff's Complaint to overturn Prudential's disallowance of Plaintiff's claim for long term disability benefits.

Plaintiff went out of work on or about February 4, 2002 to undergo a surgical procedure known as a L5-S1 posterolateral fusion with instrumentation designed to provide relief from lower back pain. DSF ¶20.[1] As of the filing of his Complaint, Plaintiff had not returned to work. DSF ¶10. On July 22, 2002, Plaintiff filed a claim for Long Term Disability benefits ("LTD benefits") under a Plan ("LTD Plan") provided by Prudential to Bank One, Plaintiff's employer.

---

[1]     "DSF ¶__" refers to Defendant's Statement of Facts Submitted Pursuant to Local Rule 56.1 filed in support of Defendant's Motion for Summary Judgment.



DSF ¶48, 11. After a review of Plaintiff's medical records, Prudential disallowed Plaintiff's claim in a letter dated August 27, 2002, stating in part that the available medical evidence did not support Plaintiff's reported inability to perform his own sedentary occupation with the ability to change positions at will. DSF ¶49.

On October 22, 2002, Prudential received Plaintiff's first appeal. DSF ¶50. Plaintiff furnished additional medical records on or about November 22, 2002. DSF ¶50. By letter dated January 22, 2002, Prudential upheld its decision to disallow LTD benefits. DSF ¶51.

On February 4, 2003, Plaintiff filed a second appeal. DSF ¶52. Following that appeal Prudential submitted Plaintiff's medical file to Dr. Gale Brown for review and comment on any medically-determinable impairment that would significantly restrict Plaintiff's function related to a sedentary occupation. DSF ¶53. Dr. Brown completed his review of Plaintiff's medical file and wrote a report dated April 3, 2002. DSF ¶54. Dr. Brown concluded that Plaintiff's ongoing symptoms of persistent severe and disabling pain are not supported by the clinical and diagnostic evidence related to Plaintiff's lumbar spine condition. Dr. Brown also stated that the clinical and diagnostic evidence does not support musculoskeletal or neurological impairment that would preclude Plaintiff from performing the essential duties of his own sedentary occupation on a full time basis, with allowance for position changes. He noted that Plaintiff's occupation does not require heavy lifting, or highly repetitive bending and twisting. DSF ¶54. In his report Dr. Brown also noted that there were non-physical factors adversely impacting Plaintiff's gainful employment, including his fear of losing his job, psychiatric issues, symptoms disproportionate to medical evidence and expected recovery, and opiod dependency. DSF ¶55.

In connection with Prudential's review of Plaintiff's claim, Prudential was provided a job description from Plaintiff's employer, Bank One, on or about March 10, 2003. DSF ¶56. A note

on the job description provided to Prudential by Bank One states that prior to Plaintiff's going on short-term disability (about February 4, 2002), Plaintiff was advised by his employer that when he completed his then assigned project, his position would be eliminated as Bank One no longer needed his mainframe computer skillsets and his gaps in skills were so significant they would not be bridgeable. DSF ¶56.

On April 16, 2003, Prudential sent Plaintiff's counsel a letter upholding its prior decision disallowing LTD benefits. DSF ¶57. Prudential's letter noted that while Plaintiff may continue to experience some back pain and attend additional office visits, those facts do not support an impairment that would prevent sedentary duties. DSF ¶57.

This action was then commenced by Plaintiff challenging Prudential's disallowance of his claim for LTD benefits under the Plan.

### Statement Of Facts

A. **Plaintiff's Medical Condition Prior To Surgery**

On February 4, 2002, Plaintiff reported to his physician that he started to have back pain two (2) years before his February 4, 2002 surgery, after lifting heavy boxes. DSF ¶20. He reported that he had ongoing back pain with some right side buttock pain without any significant radicular symptoms. DSF ¶20.

Plaintiff's submitted medical records indicate that he had a lumbar epidural steroid injection under fluoroscopy that he received on November 8, 2000. DSF ¶17. At that time, Plaintiff reported left lower back pain with radiation to the left groin. DSF ¶17.

Two weeks later on November 22, 2000, Plaintiff returned for a second lumbar epidural steroid injection under fluoroscopy. DSF ¶18. At that time, Dr. Amin noted that the lumbar epidural steroid injection had provided some improvement for Plaintiff. DSF ¶18.

No medical records were submitted by Plaintiff that showed the course of his treatment over the next seven (7) months.

The next medical record pertains to a right lumbar facet steroid injection, L3-4-5, 5-S1 and L2-3 under fluoroscopy performed on June 13, 2001. DSF ¶19. Plaintiff reported his pain at a level 4 of 10 and at a level 2 of 10 on discharge. DSF ¶19. Even at a level 4 of pain, one checks a "smiley face". (R. 099). This is the only quantification of plaintiff's pain level pre-operatively.

There are no medical records submitted by Plaintiff showing Plaintiff' medical treatment for the next seven (7) months.

We do know that during this time frame, Plaintiff was taking 80 mg of Oxycontin three or four times a day. DSF ¶22. We also know that during the two year period prior to his back surgery, Plaintiff was working full time. We now know that just prior to taking short term disability to have the surgical procedure of February 4, 2002, Plaintiff's employer had advised him that when his current project was completed his position would be eliminated. DSF ¶56.

Against that backdrop, Plaintiff elected to have back surgery in February 2002. DSF ¶20.


**B.**     **Plaintiff's Medical Course After Surgery**

Plaintiff was discharged from the hospital on February 13, 2002. DSF ¶21. He was given a brace and had started ambulating satisfactorily according to his surgeon, Dr. Howard An. DSF ¶21. Plaintiff's records show that he visited Dr. An for follow-up and received physical therapy from Athletico. Later in 2002 and into 2003, the records show treatment by Dr. Amin of the Pain Center. Some of the more salient facts will be highlighted in this section.

On March 22, 2002, Plaintiff was seen by Dr. An for his second post-op exam. Dr. An stated that: "At this time he is much improved following his surgery. Prior to surgery he had significant discomfort and now he reports significant improvement." DSF ¶23. Dr. An concluded with the opinion that Plaintiff was making satisfactory and that he planned to see the Plaintiff at two months. Dr. An then stated: "At that time if we feel he is doing well we will consider possible return to work." DSF ¶23. That entry is the first reference to a possible return to work for Plaintiff.

On April 5, 2002 Plaintiff was seen in the clinic with complaints of phantom hardware movement in his back. Dr. An noted that the fusion was consolidating nicely and the hardware was in place. DSF ¶27. Dr. An's office note goes on to state: "Our concern at this point in time is the patient's great need for pain medication so far out of surgery. We can appreciate that every patient has different pain tolerances, but this patient should be a little further along off of the narcotics at this time." DSF ¶27.

On April 23, 2002, which would be approximately the two-month point following discharge from surgery, Plaintiff stated that "he really does not have a large component of pain." DSF ¶28. While Plaintiff he had some achiness and soreness occasionally at the surgical site, he was feeling much better and was very happy that he had the surgery. DSF ¶28.

On April 30, 2002, Plaintiff had his initial evaluation for physical therapy at Athletico. The physical therapist states that currently Plaintiff has bilateral calf and thigh pain. Plaintiff rated his back pain as 4 to 5 on a scale of 10. DSF ¶30. This is the first post-operative quantification of Plaintiff's pain. At that same evaluation, Plaintiff reported that he is able to sit approximately two hours. His complaints were defuse and general with all activities. DSF ¶30.

On May 10, 2002 Plaintiff had a check-up three months after surgery. Dr. An noted that "he is doing better than before surgery with relief of back and leg pain." DSF ¶32. Dr. An also reported that Plaintiff feels he is going to need help from a psychiatrist for his depression as well as a possible detox program. DSF ¶32.

Plaintiff saw Dr. An again on June 4, 2002. At that time Dr. An noted that Plaintiff's pain is much better than his pre-operative status. DSF ¶33.

On June 18, 2002, in a letter to Plaintiff's primary care physician, Dr. Amin noted that Plaintiff has been on escalating doses of opiates and that he was on Oxycontin for a long term prior to surgery. Dr. Amin opined that Plaintiff was chronically dependent on his opiate medication and would need detoxification. DSF ¶35.

On June 26, 2002 Dr. An made an office note stating that he had become aware that there was some overlap of medications prescribed between the primary care physician and the pain center physician. Dr. An stated that he would no longer prescribe oral pain medications for Plaintiff. DSF ¶36.

On July 31, 2002 a CT scan of Plaintiff's spine revealed no abnormalities in the L5-S1 region. DSF ¶38. On August 2, 2002 Dr. An stated that in one month Plaintiff should be able to go back to work with some restrictions. DSF ¶39.

On September 3, 2002, just before he was to be reevaluated by Dr. An to establish a return to work, Plaintiff presented himself to the Emergency Room at Rush Presbyterian St. Luke Medical Center complaining of lower back pain. At that time he complained of lower back pain. He described the pain as stabbing and as non-radiating. He was given an extensive physical exam which reported all normal responses. He was administered Toradol and morphine. He was prescribed Ultram and Norco. After a few hours he was discharged to home. DSF ¶41.

Then on February 22, 2003, when Plaintiff visited Dr. An, Plaintiff complained of significant tenderness to palpation at the L4-5 level and paraspinal muscles. Dr. An noted there were no significant neurological deficits and that he would not recommend further surgery. DSF ¶46.

## Standard For Summary Judgment

Summary Judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the court must construe the evidence and make all reasonable inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). On cross-motions for summary judgment, each movant must individually satisfy the requirements of Rule 56. Proviso Association of Retarded Citizens v. Village of Westchester, 914 F.Supp. 1555, 1560 (N.D. Ill. 1996).

## Rule 52 Does Not Provide For A "Paper" Trial

Plaintiff has suggested that this Court should, as an alternative to applying summary judgment standards, weigh the evidence and enter findings of fact and conclusions of law. (Plaintiff's Memorandum p.4). As noted in Latzke v. Continental Casualty Company, 248 F.Supp. 2d 797, 799-8 (E.D. Ill. 2003), that procedure has not been adopted in this circuit.[2]

## ERISA Plan Standard Of Review

The standard of review that applies to Prudential's decision regarding benefits in this case is the "arbitrary and capricious standard." The Plan states that "you are disabled when Prudential determines that you are unable to perform the material and substantial duties of your regular

---

[2]    In Deal v. Prudential, 2003 U.S. Dist. LEXIS 8697 (N.D. Ill.) that procedure was followed by agreement of the parties after denials of cross motions for summary judgment.

occupation due to your sickness or injury . . ." (Emphasis added: DSF ¶13)   When plan documents confer discretionary judgment on an administrator, decisions of the administrator are reviewed under the "arbitrary and capricious standard."   See Postma v. Paul Revere Life Insurance Co., 223 F.3d 533, 538 (7th Cir. 2000); but See Herzberger v. Standard Insurance Company, 205 F.3d 327, 333 (7th Cir. 2000).[3]

In reviewing an administrator's decision under the arbitrary and capricious standard, all questions of judgment are left to the administrator of the plan.  See Patterson v. Caterpillar, Inc., 70 F.3d 503 (7th Cir. 1995) citing Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir. 1995).   Applying the arbitrary and capricious standard of review, this Court can reverse Prudential's decision only if this Court is confident that Prudential overlooked something important or seriously erred in appreciating the significance of the evidence.   Prudential's discretionary judgment cannot be reversed if it was incorrect, only if it was arbitrary and capricious, or completely unreasonable. Id.

Because the decision rendered by Prudential's plan administrator must be reviewed under the arbitrary and capricious standard, review is limited to the administrator's record.  See Perlman v. Swiss Bank Comprehensive Disability Protection Plan, 195 F.3d 975, 981-82 (7th Cir. 1999).  The Court can only review the facts and documents Prudential had before it at the time Prudential rendered its decision.  Id.

In reviewing the determinations made by plan administrators, courts may not require administrators to accord weight to the opinions of claimant's physicians, nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that

---

[3]     Analysis provided by the U.S. Supreme Court's decision in *Black & Decker Disability Plan v. Nord*, ____ U.S. ____, 123 S.Ct. 1965, 1970-72, 155 L.Ed.2d 1034 (2003), calls the decision in Herzberger, supra, into question because the Court found that the Secretary of Labor's view that ERISA is best served by "preserv[ing] the greatest flexibility possible for . . .operating claims processing systems consistent with the prudent administration of a plan is entitled to deference."

conflicts with a treating physician's evaluation.  <u>Black & Decker Disability Plan v. Nord</u>, ___

U.S. ___, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003).

<u>**ARGUMENT**</u>

**I.    Plaintiff's Medical Record Reflects A Pattern Of
       Inconsistent Symptoms That Worsen
       <u>Just Prior To Re-evaluation For Return To Work</u>**

As noted above, prior to surgery Plaintiff rated his pain was a 4 out of 10.  The surgery was designed to alleviate Plaintiff's pain.  The surgery was successful and no abnormalities were found on the post-op CT scan.

On his second post-op visit (March 22, 2002), Dr. An reported that he is much improved following surgery and that Plaintiff reports significant improvement.  DSF ¶23.  Dr. An stated that Plaintiff was making satisfactory progress and that in two months he would consider possible return to work.  DSF ¶23.

Then what happened?  During the period of time between discharge on February 13, 2002 and his first visit to Dr. An on February 22, 2002, and the period from the first visit to the March 22, 2002 visit there were no complaints of pain, there were no unscheduled visit to Dr. An.  However, once Dr. An indicates that soon Plaintiff will be evaluated for return to work, Plaintiff's symptoms change.  Now, on March 29, 2002, he is back to see Dr. An with complaints of left groin pain, and new post-op complaints of right leg pain, anterior thigh pain, and pain in the bottom of his right foot.  DSF ¶24.  On April 1, 2002, Plaintiff complains of increased right leg numbness, states that his ambulation is affected, and asks for anxiety medication.  DSF ¶25.  On April 5, 2002, Plaintiff comes to clinic complaining of phantom hardware movement.  DSF ¶27.  Dr. An notes his concern about Plaintiff's great need for narcotic pain medication.  DSF ¶27.

On April 22, 2002, at Plaintiff's request, Dr. An wrote a letter to Plaintiff's employer explaining his medical history and his rehabilitation and asking that his employer be less rigid on its absentee policy. Resp. Pl. ¶30.[4] Dr. An goes on to say that Plaintiff was anxious to return to work. Resp. Pl. ¶30. However, the record seems clear that Dr. An did not know that just prior to Plaintiff's job leave to undergo surgery, his employer had advised him that his position at Bank One was being eliminated. DSF ¶56.

The foregoing scenario where Dr. An finds the Plaintiff improving, sets a future date for return to work evaluation followed by Plaintiff's complaint of worsening symptoms, is replayed several times.

For example, Dr. An's letter to the employer was followed by an office visit by Plaintiff on April 23, 2002. At that time Plaintiff expressed some anxiety, depression, and fear about losing his job, but stated that he did not really have a large component of pain. DSF ¶28. While Plaintiff stated that he occasionally had some achiness and soreness at the surgical site, he was feeling much better and was very happy he had the surgery. DSF ¶28. On April 30, 2002 at his initial evaluation for physical therapy Plaintiff rated his pain as 4 to 5/10. DSF ¶30. Plaintiff reported he was able to sit approximately two hours, he denied numbness and his complaints were diffuse and general. DSF ¶30. On April 30, 2002, Dr. An had indicated on a form to Bank One, Plaintiff would be reevaluated on May 24, 2002 for a return to work date. Resp. Pl. ¶31. On May 24, 2002 Plaintiff's pain level goes up to 5 to 6/10, ability to sit goes down from two hours to 45 minutes. Resp. Pl. ¶40. Thereafter, on June 4, 2002, Dr. An states that Plaintiff's pain is much better than his preoperative state. DSF ¶33. Dr. An orders another month of physical therapy and the he will return to work with some restrictions. DSF ¶33. Then two days

---

[4] "Resp. Pl. ¶ __ " refers to Defendant's Response to Plaintiff's Local Rule 56.1 Statement and in each case refers to Plaintiff's Statement and Defendant's Response.

later, Plaintiff calls Dr. An and complains of lower back pain at the surgical site as well as bilateral lower extremity pain. DSF ¶42. At this physical therapy sessions on June 20, 2002, Plaintiff now rates his pain at 7/10 and on June 27th Plaintiff reports that he can only sit for 15 minutes. Resp. Pl. ¶44;45. Dr. An orders four additional weeks of physical therapy. Resp. Pl. ¶45.

He has a follow-up appointment with Dr. An for July 19, 2002. Resp. Pl. ¶47. But the day before, July 18, 2002, the physical therapist sends a report to Dr. An stating that Plaintiff's report of pain has worsened to 10 out of 10. Resp. Pl. ¶46. When Plaintiff sees Dr. An on July 19, 2002, Dr. An stated that Plaintiff had good relief from back pain after surgery but that it was returning somewhat in the mid-low back. DSF ¶37. Dr. An was under the impression that Plaintiff has significant residual back pain and some numbness in the anterior aspect of the left thigh. DSF ¶37. Dr. An ordered a CT scan and stated that although Plaintiff was not able to work hopefully in a couple of months he should be able to do some light duty work. DSF ¶37. The CT scan found no abnormalities in the lower spine and found the hardware in place. DSF ¶38.

None of Plaintiff's physicians offered any explanation for this apparent decline in Plaintiff's health. Based on Plaintiff's self-reported symptoms Plaintiff is now under worse pain than he was before he had his clinically successful surgery.

On August 2, 2002, Dr. An saw Plaintiff for his six month follow-up. DSF ¶39. Dr. An stated that Plaintiff was better since surgery and in one month he should be able to go back to work with some restrictions. DSF ¶39. That same date, Dr. An completed a form stating that Plaintiff would be evaluated for return to work on September 6, 2002. DSF ¶40. There are no treatment notes for the rest of August, 2002.

11

On August 27, 2002 Prudential issued its letter disallowing Plaintiff's claim. DSF ¶49. The next entry is for September 3, 2002 when Plaintiff presents himself at the emergency room at Rush Presbyterian St. Luke's Medical Center complaining of lower back pain. DSF ¶41. In his assessment by the emergency room doctors, it was noted that he was able to ambulate normally, his gait was normal as were all aspects of his physical exam. He was given narcotic pain medication and after a few hours was discharged. DSF ¶41.

Now, after receiving Prudential's disallowance of claim, Plaintiff's self-reported level of pain and symptoms worsen. He returns to Dr. An on September 6, 2002 complaining of "uncontrollable pain" which Dr. An notes arose in recent weeks. Resp. Pl. ¶51. He rates his pain on visits to the physical therapist as 9/10 (September 5, 2002). Dr. An on September 6, 2002 said he would evaluate Plaintiff for return to work in three months, which would be early December 2002. Notwithstanding his complaints of severe pain, Plaintiff does not return for any treatment until November 6, 2002 when he tells the physical therapist that his pain is from 7-9.5/10 (November 6, 2002) Resp. Pl. ¶54. Then Plaintiff rates his pain at 10, the maximum, at the Pain Center on November 12, 2002. Resp. Pl. ¶56.

On January 14, 2003, the Pain Center notes that Plaintiff reports that the first epidural injection provided relief but that the last two did not. There is no medical explanation for this result. Plaintiff now reports numbness and pain in the left thigh. Resp. Pl. ¶60. Dr. An reports that Plaintiff now states he has significant tenderness with palpation to light touch around the incision area. Resp. Pl. ¶61. These seem to be new, unexplained symptoms.

On February 25, 2003 Dr. An posits that Plaintiff's pain came from multiple sources including muscles, scar tissue and soft tissue around the surgical area. Resp. Pl ¶62. However, Dr. An does not explain what medical facts he relied upon to make that postulate.

In his April 3, 2003 analysis of Plaintiff's medical records, Dr. Gale Brown specifically pointed out the changing nature of Plaintiff's self-reported symptoms. He also specifically noted that the Plaintiff's ongoing symptoms of persistent severe and disabling pain are not supported by the clinical and diagnostic evidence. Dr. Brown also noted that the clinical and diagnostic evidence does not support musculoskeletal or neurological impairment that would preclude Plaintiff from performing the essential duties of his own sedentary occupation. DSF ¶54; 55. Following delivery of that report to Plaintiff, none of his physicians have come forward to rebut Dr. Brown's position. Therefore, Prudential's decision to disallow Plaintiff's claim had adequate support in the record.

Prudential submits that rather than being factually similar to Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914 (7th Cir. 2003), this case is factually similar to Robyns v. Reliance Standard Life Insurance Company, 2003 WL 21850820 (S.D. Ind. 2003), where the court discounted plaintiff's own characterization of the severity of her symptoms and medical opinions that lacked detailed explanations. *10

## II. Plaintiff Had Other Incentives To Exaggerate His Level Of Pain

Another factor raised by Dr. Brown was Plaintiff's opoid dependency. Dr. An stated his concern regarding this condition and more than once noted that Plaintiff should go through a detox program. Dr. Amin also recommended that Plaintiff go through detox. Dr. An became aware that Plaintiff was getting narcotic pain medication from two of his physicians without them being aware that the other was also prescribing. Although discussed many times by his physicians and by Plaintiff, the medical record does not reflect that Plaintiff ever participated in a detox program.

The record does reflect that when Dr. An reduced his pain medication, Plaintiff resisted. Common sense tells us that a patient who is dependent on opiates has an incentive to exaggerate his pain level in order to assure a continuing supply of drugs. This incentive to exaggerate pain is amplified when the patient has appeals pending regarding the denial of disability benefits and when a return to work means a termination of his position because his mainframe computer skillsets no longer match what the marketplace needs.

III.    **Alternatively, Plaintiff's Claim Is Subject To A Twenty-Four Month Limitation**

Dr. An reported to Prudential that he deemed Plaintiff disabled by reason of chronic pain. DSF ¶48; Resp. Pl. ¶17. Disability based on pain falls within the category of disabilities that are subject to a twenty-four month limitation under the LTD Plan. DSF ¶15; 16.

Thus, even if Plaintiff were disabled within the definition of the LTD Plan (which Prudential disputes) his benefits would be subject to a life-time limit of twenty-four months.

IV.    **Alternatively, Plaintiff's Claim Is Barred By The Pre-existing Condition Limitation of the LTD Plan**

If Plaintiff is determined to be disabled by reason of his pain (a contention which Prudential disputes), then his claim constitutes a pre-existing condition and is barred under the LTD Plan. DSF ¶59. According to Plaintiff he suffered from disabling severe pain for two years before his February 4, 2002 surgery. DSF ¶20; 61. Thus, his disability existed when the LTD Plan was effective on January 1, 2001 and, therefore, is not covered under the LTD Plan. DSF ¶59.

## *CONCLUSION*

For all the foregoing reasons, Prudential requests that this Court grant Summary Judgment in its favor and dismiss the Complaint.

Respectfully submitted,

PRUDENTIAL INSURANCE COMPANY OF
AMERICA

BY: _Leonard S. Shifflett_

One of its Attorneys

Leonard S. Shifflett (ARDC #2587432)
Brendan O'Connor (ARDC #6276720)
Keith Allen (ARDC #6271854)
QUARLES & BRADY LLP
500 West Madison, Suite 3700
Chicago, Illinois 60661-2511
(312) 715-5000